May it please the Court. Roger Kaplan, my colleague, is Alex Anglum of Greenberg Shore. We represent the plaintiff appellant on this appeal. This is an appeal from a dismissal under a 12b-6 motion. The Supreme Court in three cases, Twombly, Iqbal, and Matrix Initiatives, has clearly stated that the standard of implausibility is not a colloquial kind of implausibility where a savvy judge may say, I think your claim is incredible, or, frankly, I don't think you're going to succeed, which is what I think the defendant is arguing in this case and what the district court judge below was his approach to the case. The court has clearly said that in determining whether allegations are implausible, all the plaintiff needs to do is move from factually neutral to factually suggestive, that all plaintiff needs to do is to demonstrate that discovery would not be a waste of time, but there is a reasonable expectation that discovery could produce facts that would further support the claim. The claim does not have to be proven on the allegations as alleged. Now, in this case, we feel that the allegations in this case not only easily satisfy that standard, but also under the prevailing cases in California would survive a motion for summary judgment and would entitle us to get to a jury in one of those cases. And I think that's what the court has said. I think you laid out all your cases in the briefs. Yes. So as I understand your argument, I guess it's your position that when you signed the agreement or the form, whatever it was, the application form. That's correct. That's no more than an offer, is that right? It was an offer that was accepted. Yes. That's correct. It makes for a contract. Yes. But that original document was just an offer. It was an offer that was accepted by us when we signed it and agreed to abide by the terms and conditions. So what are the elements of this contract? I'm just kind of curious. The elements of the contract are clearly set forth on that page. No, I'm not. I'm asking you right now. Tell me what the elements of the contract are. The elements of the contract are that we would be reimbursed as an in-network eyewear provider, which has certain benefits to us. We're not reimbursed directly. What that means is that an eye doctor would submit a claim for an in-network eye frame and would get reimbursed directly at a certain rate, as opposed to if we were not in-network, the eye doctor does not submit the claim, the patient must submit the claim, and it's a different reimbursement rate. In other words, Your Honor, we're an in-network eyewear supplier. In order to maintain that status, the application, which was accepted by us, clearly states what cause is, what we have to do, and what is cause for termination. It says, I understand, meaning the applicant, I understand that failure to keep VSP and doctors updated at all times with a current catalog price is cause for denial of reimbursement. Well, I'm not going to press the whole matter whether there's even a contract here, because they don't really seem to argue that there isn't one. But the argument here, as I understand it, is that you contend that there was a, this was a durational contract? This contract was a contract that was terminable only for cause. So you don't contend that it was, you contend it was an indefinite contract. It was an indefinite contract. But you read these provisions in this application as imposing, could only be terminated for cause. That's the argument? It set forth what the basis of termination is. It does? It does. It says that if you fail to keep VSP and doctors updated at all times with current catalog price, it's cause for denial of reimbursement. Then it goes on to say, I understand that markups over 25 percent may result in my frame company lines being nonreimbursable, meaning you won't be treated as in-network. It further says, I understand that if at any time my frame company lines do not meet these criteria, it may result in my frame company lines being nonreimbursable, meaning not in-network. And then finally, on the next page, it says, if VSP should find reason, a VSP representative may, upon notification, audit my company's financial records related to frame sales to verify the doctor's typical net acquisition price. I reserve the right to refuse it, the audit, but I understand that my frame company lines will no longer be reimbursable by VSP if I refuse it. Now, what is the point of reserving a right to audit if you can terminate at will? Why do you need to audit to make a determination whether the two prior criteria, meaning you are providing prices and you are maintaining a margin at 25 percent or less, if you can terminate at will, why include the audit right? Why reserve an audit right and say, if you don't permit us to audit, we will terminate you? If it's at will, you don't have to set forth any reason to terminate. Moreover, there's no reservation, there's no disclaimer in this contract, in this upon offer and acceptance, it's a contract, there's no disclaimer. This is a contract that is, this is an application prepared by a very large company, it has in-house counsel, it has outside counsel. There are no disclaimers in here, as you would expect to find, of a reservation of right that we reserve the right to terminate you at any time for any other reason or for no reason at all. Now, we find that, I mean, today and for the last 20 years, we have found that in every employee handbook, we, lawyers are completely aware of the fact that if you set forth bases for termination and you don't set forth a reservation of rights to terminate for any other reason, there is a reasonable reading of that as these are the bases for termination. Cases we've cited support that, particularly the cases of Burgermeister, Revell, Great Western, and Long Beach Drug Company, each one of those cases were long-term relationships, each one of those cases, most of those cases were exclusive relationships, and in each case there was simply a statement, in some cases an oral statement, that all you need to do is use your best efforts and we'll continue dealing with you, or you take care of the territory and we'll continue dealing with you. And under California law, that is sufficient delineation of a termination right to make, to take the case out of an at-will relationship. So it's essentially your argument is, is using Judge Fletcher's argument, is that the case of Burgermeister  And I think it's important to note in this reference that this application, which was an offer, and you say it's accepted, was not a contract of duration. It was a contract of indefinite duration. It was a contract of indefinite duration. But these two provisions that they had to check in Category A or B, Category A and B, reflects the intent of the parties that they could only terminate this contract if these conditions were not continued to be met. That's the intent? That's what this? Well, Your Honor, we're not on summary judgment. We're on the pleading. No, I understand that. Our claim is that these elements, which constituted a contract, and you can have express terms in an implied contract, these So now it's an implied contract. Well, no, there was clearly a This is not a contract. Your Honor, there was, there's no contest. But there's nothing in here that suggests, I mean, you look, you read this document, and you try to forget what the terms and elements of this contract are, and I don't see any. Well, Your Honor, there is not, well, there's certainly not So what we have to have here is an implied kind of theory. You have, we do. We have an implied contract. There clearly was a contractual relationship that we would satisfy these criteria and we would be treated as an in-network supplier. Now, the California case law is clear that you can have an implied contract with express terms, and we cite those cases in our brief. The express terms here are, you are expected to do the following. You're expected to supply us with your pricing on a regular basis, and you are expected to have either a 25 percent or less markup for the doctors, the difference between what you're selling to the doctors and what your list price is. Now, that was not unimportant. That was not unimportant to VSP because they admit in their brief that that provides them with a level of protection, both data and protection against insurance fraud, by having eyewear frame manufacturers guarantee that their doctors are not having a markup of greater than 25 percent. So it provides them with a benefit. All we're saying here is we are entitled to proceed to the next stage of the litigation, which is discovery. I'm not here telling you, nor do I need to convince you, that these, that what we have in the record today entitles us to judgment. It certainly moves the needle from factually neutral to factually suggestive. That there was an understanding, not only by us, but every participant in the industry. That combined with the fact that for a 20-year period, as we allege in the complaint, VSP had never terminated any manufacturer other than for cause, and any manufacturer that satisfied these objective criteria would be accepted into the program. Now, all that says is, as in Matrix, Your Honor, because in Matrix the Supreme Court said what you've alleged here does not state a claim. If this is all the evidence you have, you have not sustained a claim, because the evidence of less than a dozen cases of loss of smell based upon using Zycam is not statistically significant. So you haven't stated a claim. I mean, you have not proven a claim. But you have sufficiently suggested a claim to entitle you to discover whether there are any additional documents within the defendant's files that would tend to support your claim, just as we have a 20-year history here of this application being used by this defendant and never having once refused to deal with any manufacturer that continues to satisfy these elements. We believe that discovery will show that there was an internal recognition within VSP that they were going to deal with any manufacturer and continue to deal with any manufacturer that would terminate anyone at will, and that that was the essence of the representation they were making to the industry. The only issue here is, are we entitled to do that? Wait a second. What if they were to change their criteria and say, no, you guys have to meet this criteria? Could they do that? We have a we have a it depends upon what it is they try to do. If they try to change their criteria, which focuses exclusively at us. No, just in general. In general, Your Honor, it depends upon the facts. And you're not willing to meet that criteria. But what I'm saying. You're out, right? No. See. Let me try to answer. There is certainly, for example, in consolidated theaters, in the California Supreme Court case, depending upon how the industry changes and depending upon how the facts change, the court in that case implied a term that said that the contract, the union contract, would continue for so long until industry circumstances changes where it simply didn't make any more sense for that to be the case. We're not I'm not suggesting that. I understand. But your time is right. You want to save a minute for rebuttal? You've got 45 seconds. Okay. Thank you. I heard that side. Oh, no. I'm just it's been a long. It's been a long morning. I realize I'm standing. Judge Fletcher and I and Judge Hugg. Well, Judge Smith has three days, but Judge Fletcher and I have been here five days. And I realize I'm standing between you and lunch. So I will try to be as brief as I can. May it please the Court. And Judge Hugg, it's a pleasure to see you. As for a second time, my name is Scott Hansen. Along with Laura Brenner, my partner, we represent VSP, the Respondent, in this appeal. The issue for this Court is whether the second amended complaint plausibly alleges that VSP agreed that it would never change how it does business with Aspects, no matter how poisonous that relationship becomes, or in this case became. As long as Aspects keeps providing its prices and updating them. Second amended complaint doesn't allege that there's any express agreement to that effect. And it doesn't even allege that the parties ever even discussed that subject. It alleges that this term has to be implied into the contract. Now, California courts have, on occasion, implied a term into the contract. But when you're talking about an implied term, you're talking about a term that has to be implied by conduct of the parties. And according to California law, that conduct has to be such that it can be rightfully said that if the term had been called to the party's attention, they would have both agreed to it. So when looking at the second amended complaint, the question is whether it alleges conduct by VSP. Well, so let's take counsel's argument. They signed this application. Yes. As he pointed out, it has these various provisions and requires, can require an audit. And, you know, why, why isn't that enough to suggest within this industry, this industry, that these provisions, you put them in, I mean, you, it's your application. They checked the box. They knew what it said. Right. Why isn't that enough to suggest that this relationship would continue on indefinitely unless and until one of these, you know, these conditions weren't met? There are several reasons, and I'll try to make these quickly. Why is that such an implausible claim? Well, first of all, bear in mind this is an application. Right. And it doesn't discuss termination. It discusses eligibility like lots of applications do. This is very odd to me that a huge company like yours wouldn't have contracts rather than just applications which, if accepted, apparently form a contract. It's, you know, look at, Judge Paez asked the question earlier, what are the terms of this contract? I mean, this is a classic basic at-will arrangement. There are very few terms to this contract. So you don't need, if you hire me to come mow your lawn, we don't have to have much of a contract. Well, this is a lot more than that. It involves a lot of money, and it involves relationships that go for many years. Well, back to Judge Paez's question, this, besides being an application, it doesn't even pretend to address the relationship that may ensue if the application is accepted. For example, it doesn't address or discuss the amount of reimbursement. It doesn't discuss the terms of reimbursement. It does not discuss whether the applicant will be in-network or whether the applicant will be out-of-network. It doesn't even discuss what a network is or how many networks there may be. It does not even pretend to discuss what happens if the applicant, in this case, aspects, supplies products that are unreliable or shoddy or dangerous to the customer. It doesn't discuss what happens if the applicant, in this case, aspects, pays improper or illegal inducements to the doctors to get them to stock aspects products. It doesn't discuss any of those subjects, because the only subject it addresses is the need to have current pricing so that VSP can implement whatever reimbursement strategy it has from time to time. And critically, there's nothing in this application that states that VSP promises that aspects will remain in-network as long as aspects updates its prices. There's nothing in this application that says that aspects will remain in business, that VSP will continue to do business with aspects as long as aspects updates its prices. And there's certainly nothing in this agreement that promises to accept unacceptable behavior as long as aspects updates its prices. And that lack of a promise to do something as long as something else happens is the critical distinction between this application and all of the cases they cited. The Long Beach drug case, Great Western Distillery, Luchanovsky, Warner-Lambert, in all of those cases, there was an agreement that one party would continue its relationship, the status quo, as long as the other party performed in a specific way. And in all of those cases, that was explicit. Now, we differ with my friend, Mr. Kaplan, on the interpretation of Ravel, and I believe that ultimately the court found that to be an at-will relationship, but it really, that's neither here nor there for purposes of this case. There is nothing, in those cases there was an agreement that, for example, the beer distributor, Burgermeister, would continue to be the exclusive beer distributor as long as it purchased the supplier's beer and as long as it served the territory. Same thing with Long Beach Drugs. Long Beach Drugs was promised the right to be the exclusive supplier to Long Beach of Rexall products, as long as it served the consumer community and only sold through its stores. The whiskey distributor was promised that he would have the exclusive right to sell whiskey in California, with one exception in this city, as long as he only bought from the particular supplier and not from competitors. That promise is completely absent and cannot possibly be implied into this application form. Because there's no allegation that the parties never even discussed it, there's no possibility that there's some patina that's going to be placed on the language of the contract or the application, and what you see is what you get. The earlier decision in this case involved exactly this same application. It was a centerpiece to the earlier appeal. When this Court looked at the application in the earlier appeal and the other evidence and aspects submitted to support its implied contract claim, the Court concluded that the record in this case does not reveal any intent on the part of VSP to promise aspects that it would not alter the relationship or aspects in network status, as long as aspects disclose prices. That conclusion was reached after looking at this application, and that's because a promise to provide and update prices is not a promise that the status quo will never change, as long as those prices are updated. And if it were otherwise, a simple application form would transform lots of at-will relationships unintentionally into nearly permanent ones. That's why the application just can't be construed to form a contract that says that the status quo can never be changed as long as they update prices. What do we do with the argument and allegation that you've never terminated anybody but for cause? There are two paragraphs. The complaint relies on paragraphs 18 through 22. Paragraphs 18 through 20 are just dealing with the application by itself. 21 and 22 are allegations that are absolutely bare bones, factless, threadbare allegations on information and belief. So in paragraph 21, for example, it alleges on information and belief that V.S.P. intends and the industry understands that manufacturers will not be removed except for cause, and it goes on to define cause as based on the application. And as a result of these information and belief allegations, it goes on to say, as a result and as a result of V.S.P.'s course of dealing with the industry for 25 years, there's an implied term. We don't even know what industry is being alleged here. Is it the insurance industry? Is it the doctors who buy the frames and seek reimbursement? Is it the frame industry? And if, in fact, there was a course of dealing where everybody in the industry had this common understanding, there would be facts to support it. Somehow the industry has to get the word. Was there a memo? Was there a speech? Was there a publication? Was there a code of conduct? Was there some basis to make that bald allegation that the industry understands? And that's part of the due diligence that counsel needs to do before they sue. Well, let's assume they could show that. Let's just accept their representation that if they had some discovery and they got into your records, it would show that nobody was ever terminated, except for some sort of cause reason. First of all What would we do with that? What's the significance of that? Well, they need to allege some facts first. These are just the kind of bald factual conclusions that the Supreme Court has said we don't credit for purposes of looking at a motion to dismiss. They have to allege some facts. If there was an industry understanding, and if they are in the industry, they ought to be able to allege some facts other than bare conclusions to support it. And with respect to the allegation that nobody has been delisted for any other reason, there isn't even an allegation that anybody else has ever been delisted. So how can you allege, how can you infer a course of dealing when you haven't even made an allegation? According to this second amended complaint, the only party who's ever been quote-unquote delisted is Aspects. And one instance doesn't create a course of conduct. That's why Judge Mendez was right when he looked at this record and he said, I can't find any alleged conduct in here by which VSP can be said to have plausibly agreed that if it had been called to its attention, it would have agreed never to change how its company does business with Aspects, as long as Aspects supplies its prices. Thank you. You've got one minute. Thank you. We do allege in paragraph 22 of the complaint that VSP has not within the past 20 years removed a manufacturer from its list, its approved list, except where the manufacturer failed to comply with the requirements stated in the application. And there have been instances where they have done that, where they have removed people. The other point counsel made is that the amounts in terms of reimbursement are not in the contract. That's because they don't reimburse us. That's between them and their participants and their doctors. It's not an issue between us. Finally, they refer to the prior decision in this case, which was on a preliminary injunction motion where the standard was we needed to show a likelihood of success on the merits, and this Court was reviewing on an abuse of discretion standard. So in that case the Court held, we don't see any proof that VSP intended this. It's not our burden here. It's a different standard. It's a different burden. We simply need to allege facts which suggest that claim. Thank you, Your Honor. Thank you, counsel, for your arguments. We appreciate them. This ends our session for the day and for the week. All rise. The matter is submitted.
judges: Hug, Fletcher, Paez